IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

LAURIE M. K.,

                              Plaintiff,

              v.                                              Civil Action No.
                                                              3:22-CV-0947 (GTS/DEP)


COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF

OLINSKY LAW GROUP                     AMANDA TILLEY-BEELER, ESQ.
250 South Clinton Street, Suite 210   HOWARD D. OLINSKY, ESQ.
Syracuse, NY 13202

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                VERNON NORWOOD, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235



DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE


REPORT AND RECOMMENDATION

Plaintiff has commenced this proceeding, pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3), to challenge a determination of the Commissioner of

Social Security ("Commissioner") finding that she was not disabled at the

relevant times and, accordingly, is ineligible for the supplemental security

income ("SSI") benefits for which she has applied.  The matter has been

referred to me for the issuance of a report and recommendation, pursuant

to 28 U.S.C. § 636(b) and Northern District of New York Local Rule 72.3.

For the reasons set forth below, I recommend a finding that the

Commissioner's determination did not result from the application of proper

legal principles and is not supported by substantial evidence.

I.    BACKGROUND

Plaintiff was born in July of 1976, and is currently forty-seven years of

age.  She was thirty-eight years old on April 29, 2015, the date upon which

she applied for disability benefits.  Plaintiff measures five feet and eight

inches in height, and weighed approximately two hundred and fifteen

pounds during the relevant period.  Plaintiff lived at different times

throughout the record in various apartments and houses, first with her then-

husband, her sons, and her husband's son, and at other times with various

roommates, and with a subsequent boyfriend/fiancé and her sons.

Plaintiff reports that she graduated from high school with an IEP

diploma and was involved in special education throughout her time in

school.  She claims to experience continued difficulty reading and doing even simple mathematics related to counting money.  She worked in the past primarily as an adult dancer and bartender.  She has attempted to work other jobs, including as a waitress, but was eventually let go because of her inability to handle the duties related to using a computer and performing mathematical aspects of that job.

Plaintiff alleges that she suffers primarily from depression, anxiety, bipolar disorder, and seizures.  As is relevant to her application for benefits, she has treated for her mental impairments with psychiatrist Dr. David Carr and therapist Fawn Holland at Chenango County Community Mental Hygiene Services.

At the initial administrative hearing related to her application for benefits, which was held on November 13, 2017, plaintiff reported difficulty in functioning due to mood issues and anxiety.  She testified that she is able to drive but does not drive in cities or more populated areas because doing so makes her anxious.  Plaintiff reported that she experiences issues with aggression, including road rage while driving.  She tries to avoid people because they irritate her, and has a history of getting into arguments and even physical altercations with people who have made her angry.  Plaintiff stated that, during a typical day, she goes to sleep late and

awakens late, spends time with her cats and dogs, crochets, uses

Facebook with help spelling words from her son, takes her medication with

reminders from her son, and does chores with her children.  She reported

that her mood has been even worse over the past year because she has

lost multiple people who were close to her.

At the subsequent administrative hearing held on November 16,

2021, plaintiff testified that she has been experiencing even more issues

with her memory since undergoing bariatric surgery, including forgetting

appointments.  She continued to report aggression and irritability,

particularly around other people, and that as a result she does not want to

leave the house.  She testified that she does not even go grocery shopping

anymore because she has had altercations with people in the store.

Plaintiff also elaborated that she has difficulty reading such that she

required help understanding and completing the forms and

correspondences related to her application for benefits, and that she

cannot use even the simple math necessary to handle money.

II.    PROCEDURAL HISTORY

A.    Proceedings Before the Agency

Plaintiff applied for SSI payments under Title XVI of the Social

Security Act on April 29, 2015, alleging disability due to depression,

anxiety, bipolar disorder, and seizures.  Administrative Law Judge ("ALJ")
Kenneth Theurer held an administrative hearing to address plaintiff's
applications for benefits on November 13, 2017, following which he issued
a decision on January 17, 2018, finding that plaintiff was not disabled at
any point during the relevant period.  The Social Security Appeals Council
("Appeals Council") granted review of the ALJ's decision, vacating the
decision and issuing one of its own *de novo* based on its finding that
plaintiff had raised a timely and valid challenge premised on the
Appointments Clause of the United States Constitution, Article II, § 2,
clause 2.  The Appeals Council nonetheless concluded, like ALJ Theurer,
that plaintiff was not disabled during the applicable period.

Plaintiff filed a complaint in the United States District Court for the
Northern District of New York appealing the Commissioner's final decision.
On May 15, 2020, U.S. Magistrate Judge Miroslav Lovric ordered remand
based upon a stipulation of the parties.  In effectuating that remand, the
Appeals Council found that its previous assessment of the opinion from Dr.
Carr was insufficient and that, on remand, the ALJ should evaluate that
opinion pursuant to the provisions of 20 C.F.R. § 416.927 and explain the
weight given to that opinion.

On remand, the case was reassigned to ALJ Elizabeth W.

Koennecke, and subsequent administrative hearings were held related to plaintiff's application for benefits on November 16, 2021, and May 9, 2022. ALJ Koennecke issued a decision on July 7, 2022, finding that plaintiff was not disabled during the relevant period.  Plaintiff has again applied to this court for relief from that most recent decision.

    B.    <u>The ALJ's Decision</u>

In her decision, ALJ Koennecke applied the familiar, five-step sequential test for determining disability.  At step one, she found that plaintiff has not engaged in substantial gainful activity during the relevant period.  ALJ Koennecke next found at step two that plaintiff suffers from severe impairments that impose more than minimal limitations on her ability to perform basic work functions, including obesity (resolved) and mental diagnoses as variously characterized.  As part of her step two finding, ALJ Koennecke also found that plaintiff's alleged various short-term physical issues, Lyme disease infection, seizures, effects of gastric sleeve surgery, and low back pain do not constitute severe impairments.

At step three, ALJ Koennecke examined the governing regulations of the Commissioner setting forth presumptively disabling conditions (the "Listings"), *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, and concluded that plaintiff's conditions do not meet or medically equal any of the listed

conditions set forth in those regulations, specifically considering Listings

12.04, 12.06, and 12.08.

ALJ Koennecke next surveyed the available record evidence and

determined that plaintiff retains the residual functional capacity ("RFC") to

perform a range of work at the light exertional level, as defined by the

controlling regulations, with the following exceptions:

> she [can] occasionally lift and carry twenty pounds,
> frequently lift and carry ten pounds, sit for up to six
> hours, stand or walk for approximately six hours in an
> eight hour day with normal breaks; occasionally climb
> ramps or stairs; never climb ladders, ropes, or
> scaffolds; and can perform occasional balancing,
> stooping, kneeling, crouching and crawling. The
> claimant retains the ability to understand and follow
> simple instructions and directions; perform simple
> tasks with supervision and independently; maintain
> attention/concentration for simple tasks; regularly
> attend to a routine and maintain a schedule; and can
> relate to and interact with others to the extent
> necessary to carry out simple tasks but should avoid
> work requiring more complex interaction or joint effort
> to achieve work goals. She should have no more
> than incidental contact with the public and can make
> occasional, simple decisions directly related to the
> completion of her tasks. The undersigned defines
> incidental contact with the public as more than never
> but less than occasional. Simply, the job should not
> involve direct interaction with the public, but the
> claimant does not need to be isolated away from the
> public.

ALJ Koennecke went on to step four and found that plaintiff is unable

to perform any of her past relevant work.  She then proceeded to step five

and, after eliciting testimony from a vocational expert, found that plaintiff remains able to perform available work in the national economy, citing the representative positions of laundry folder, garment folder, plastic hospital products assembler, agricultural sorter, and housekeeping cleaner.  Based upon these findings, ALJ Koennecke determined that plaintiff is not disabled.

C.    This Action

Plaintiff commenced this action on September 12, 2022.[1]  In support of her challenge to the ALJ's determination, plaintiff argues that the ALJ erred in her assessment of the medical opinion submitted by treating psychiatrist Dr. Carr and Therapist Holland by failing to provide good reasons supported by substantial evidence for affording that opinion only little weight.  Dkt. No. 12.

Oral argument was conducted in this matter, by telephone, on August 24, 2023, at which time decision was reserved.

III.    DISCUSSION

A.    Scope of Review

---

[1]    This action is timely, and the Commissioner does not argue otherwise.  It has been treated in accordance with the procedures set forth in the Supplemental Social Security Rules and General Order No. 18.  Under those provisions, the court treats the action procedurally as if cross-motions for judgment on the pleadings have been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

A court's review under 42 U.S.C. § 405(g) and 1383(c)(3) of a final decision by the Commissioner is subject to a "very deferential" standard of review, and is limited to analyzing whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Where there is reasonable doubt as to whether an ALJ has applied the proper legal standards, the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987). If, however, the correct legal standards have been applied, and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision will withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact. *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 390, 401 (1971) (quoting

*Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *accord, Jasinski v. Barnhart*, 341 F.3d 182, 184 (2d Cir. 2003).  To be substantial, there must be "more than a mere scintilla" of evidence scattered throughout the administrative record.  *Richardson*, 402 U.S. at 401 (internal quotation marks omitted); *Williams*, 859 F.3d at 258.  "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis on the substantiality of the evidence must also include that which detracts from its weight."  *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *Mongeur v. Hechler*, 722 F.2d 1033, 1038 (2d Cir. 1983)).

    B.    <u>Disability Determination: The Five-Step Evaluation Process</u>

    The Social Security Act ("Act") defines "disability" to include the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).  In addition, the Act requires that a claimant's

> physical or mental impairment or impairments [be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other

kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five-step evaluative process to be employed in determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The first step requires a determination of whether the claimant is engaged in substantial gainful activity ("SGA"); if so, then the claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).  If the claimant has not worked at a level constituting SGA, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments that significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled."  *Martone v. Apfel*, 70 F. Supp. 2d 145, 149 (N.D.N.Y. 1999) (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's RFC precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), (f), 416.920(e), (f).  If it is determined that it does, then as a final matter, at step five the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(g), 416.920(g).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996); *Ferraris*, 728 F.2d at 584.  Once that burden has been satisfied, however, it becomes incumbent on the agency to prove that the claimant is capable of performing other available work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp. 2d at 150.

C.    Analysis

Plaintiff's primary argument in this challenge to the Commissioner's determination is that the ALJ erred in her assessment of the opinion from treating psychiatrist Dr. Carr by failing to provide good reasons, supported by substantial evidence, to justify the weight afforded to that opinion.  Dkt. No. 12.  Specifically, plaintiff asserts that the ALJ incorrectly relied on the

fact that plaintiff had not required inpatient psychiatric hospitalizations while ignoring her extensive and ongoing outpatient mental health treatment, ignored the consistency of Dr. Carr's opinion with that of consultative examiner Dr. Amanda Slowik, failed to explain why discrete tasks plaintiff performs for friends and family are indicative of an ability to perform sustained, full-time work, improperly relied on her perception that the opinion was based solely on plaintiff's subjective complaints, and overall misinterpreted or misused selective portions of the record in ways that are not consistent with the entirety of the relevant evidence. *Id.*

Because plaintiff's application was filed prior to March 17, 2017, the prior regulations, which have since been amended, apply to her claim. Under those regulations, the ALJ was required to consider whether the treating physician's opinion was entitled to controlling weight, which must be afforded "so long as it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with (or contradicted by) other substantial evidence in the claimant's case record. *Schillo v. Kijakazi*, 31 F.4th 64, 75 (2d Cir. 2022). If it is not entitled to controlling weight, or if it is the opinion of a non-treating physician or other acceptable medical source, the ALJ must then determine what degree of weight the opinion is entitled to by considering factors such as (1) the

frequency, length, nature, and extent of treatment, (2) the amount of medical evidence supporting the opinion, (3) the consistency of the opinion with the remaining medical evidence, and (4) whether the physician is a specialist.  *Estrella v. Berryhill*, 925 F.3d 90, 95-96 (2d Cir. 2019).  In making these findings, the ALJ is required to provide "good reasons" for the weight afforded to a treating physicians' opinion, which the Second Circuit has defined as "reasons supported by substantial evidence in the record." *Schillo*, 31 F.4th at 75 (citing *Estrella*, 925 F.3d at 96).  Moreover, when considering the weight to which a treating physician's opinion is entitled at the second step of this analysis, the ALJ is required to explicitly apply the above mentioned factors in his or her analysis; failure to do so constitutes procedural error.  *Schillo*, 31 F.4th at 75.  However, any such error may be found to be harmless "if the ALJ has otherwise provided 'good reasons' for its weight assignment" or the court is assured that "'the substance of the treating physician rule was not traversed.'"  *Schillo*, 31 F.4th at 75 (quoting *Estrella*, 925 F.3d at 96).

On November 6, 2017, treating psychiatrist Dr. Carr, in a form co-signed by treating therapist Holland, noted that the two had been treating plaintiff since May of 2014 for diagnoses of borderline personality disorder and major depressive disorder, which manifested with symptoms of mood

lability, frequent irritability, and poor frustration tolerance. Administrative

Transcript ("AT") at 519.[2] Dr. Carr opined that, as a result of these

impairments and symptoms, plaintiff would be expected to be off-task over

fifty-percent of the workday and absent from work more than three times

per month. AT 519-21. In terms of specific functional abilities, Dr. Carr

opined that plaintiff has a poor[3] ability to deal with the public, use judgment,

interact with supervisors, deal with stress, function independently, maintain

attention and concentration, behave in an emotionally stable manner, and

relate predictably in social situations; a fair[4] ability to follow work rules,

relate to coworkers, and demonstrate reliability; and a good[5] ability to

maintain personal appearance. AT 520. Dr. Carr also stated that the

number of hours plaintiff would be able to work on a regular and consistent

basis is unknown, and supported his other findings in the opinion by

explaining that plaintiff "has frequent conflict in relationships, mood lability,

---

[2]     The administrative transcript is found at Dkt. No. 9, and will be referred to throughout this decision as "AT__."

[3]     This is defined in the opinion form as meaning "ability to function is very limited, and will be unsatisfactory over 50% of the time."

[4]     This is defined in the opinion form as meaning "ability to function is often satisfactory, but will be unsatisfactory 25-50% of the time."

[5]     This is defined in the opinion form as meaning that the ability to function is satisfactory."

and poor anger management."  AT 521.

The ALJ found that, despite the fact that Dr. Carr is a treating physician who has had insight into the nature of plaintiff's impairments throughout the course of many years of treatment, his opinion is entitled to little weight because it is generally inconsistent with the record as a whole. AT 731-32.  She first elaborated that (1) treatment records show only "conservative treatment via routine counseling and medication management with no evidence of any inpatient psychiatric hospitalizations," (2) "[c]ontrary to Dr. Carr's opinion, the claimant reported completing various tasks for friends and family for cash payment," and (3) the opinion includes "no citation to either an impairment or objective finding to support the assessed limitations," noting further that "the only support Dr. Carr cites for the limitations is frequent conflict in relationships, mood lability, and poor anger management."  *Id.*  She additionally found that (1) the opined limitation regarding absenteeism is speculative and not reflected in the plaintiff's treatment notes, explaining that counseling records show that her poor attendance at treatment was related to illness and transportation issues rather than her psychological symptoms, (2) the opinion regarding plaintiff's restrictions appears to be based on plaintiff's subjective reports rather than Dr. Carr's observations, citing to a statement in one treatment

note and the fact that "[c]ounseling records also indicated that there was no evidence-based screening tools [sic] to assess her mental illness, which suggests that the restrictions identified are based solely on the claimant's subjective complaints," and (3) the opinion is "contradicted by mental status examinations in the record, as well as evidence showing improvement in the claimant's psychological symptoms."  AT 732.

Before turning to the second grouping of these reasons, I find it necessary to address the first.  In its remand order, to which the current ALJ decision is subject, the Appeals Council found its own prior assessment of Dr. Carr's opinion to be inadequate, noting specifically that (1) its reliance on the lack of inpatient psychiatric hospitalizations did not alone provide a good reason to reject the opinion, (2) its reliance on plaintiff's reports that she completed various tasks for family and friends in exchange for cash payments was also not a sufficient reason because Dr. Carr's opinion did not directly contain any statements contradictory to that activity, (3) contrary to its reasoning, Dr. Carr did cite to impairments and certain findings and/or symptoms in support of the limitations opined, and (4) neither the previous ALJ nor the Appeals Council had conducted an adequate evaluation of findings within Dr. Carr's treatment notes that might support his opinion, including notations that she had difficulty ignoring

relevant stimuli.  AT 863-64.

The ALJ's first listed reasons are all essentially verbatim reiterations of rationale that the Appeals Council directly rejected, and the ALJ failed to add any additional analysis related to them that would save them from being rejected now for the same reasons identified by the Appeals Council in its decision of June 24, 2020.  I do specifically reiterate, because it was perhaps not entirely clear in the wording of the Appeals Council's order, that the ALJ has not provided any indication of how plaintiff's completing discrete tasks for friends in exchange for money is in any way contrary to Dr. Carr's opinion.  Dr. Carr's opinion does not suggest that plaintiff is completely incapacitated, merely that there are some activities she will be unable to perform in excess of fifty-percent of a typical workday.  Further, there is no evidence to suggest that her performance of the relevant tasks, which included sporadically driving people to places, babysitting, watching her ill father, and completing various cleaning and chores, would be inconsistent with such opinion.  Because the Appeals Council has already rejected these reasons and I see no new evidence that would merit altering that conclusion, I find that they cannot now serve as good reasons for affording little weight to the opinion of plaintiff's long-term specialist treating source.

Turning to the ALJ's second set of proffered reasons for affording little weight to Dr. Carr's opinion, I find that these are little more satisfying under the fairly demanding requirements of the applicable regulations and the treating physician rule.

Regarding the ALJ's rejection of Dr. Carr's finding that plaintiff would be absent more than three times per month, her rationale is not supported by substantial evidence or even a reasonable interpretation of the record evidence. She stated that the opinion is speculative and not supported by the plaintiff's treatment notes, yet those notes do in fact document significant problems with plaintiff's attendance at mental health appointments. The ALJ attempted to distinguish that evidence by stating that missed appointments were due to illness or transportation issues, as opposed to issues associated with plaintiff's psychological symptoms, yet that observation is not borne out in the record itself. Although it is true that some missed appointments were directly attributed to illness or transportation issues, in many other instances, the notes indicate that plaintiff's absence was for reasons unknown to Dr. Carr or Therapist Holland. *See, e.g.*, AT 2018, 2038, 2109, 2114, 2122, 2123, 2148, 2167, 2187, 2204, 2210, 2220, 2227, 2235, 2239, 2249, 2254, 2255, 2264, 2265, 2267, 2293, 2297, 2305, 2307, 2311, 2312, 2313, 2317, 2321, 2322, 2323,

2325, 2343, 2353, 2357, 2369, 2370, 2377, 2382, 2391, 2412, 2413, 2419, 2429, 2430, 2438, 2451, 2471, 2475, 2480, 2481, 2488, 2489, 2493, 2501. The ALJ did not explain how she seemingly arrived at the conclusion that these missed appointments were due either to illness or transportation issues rather than plaintiff's mental health symptoms, including her reluctance to interact with others.  At other times, it was noted that plaintiff missed appointments because she forgot or thought they were scheduled for a different day or time, AT 1992, 2026, 2061, 2100, 2228, 2348, 2354, 2387, 2414, and, on one occasion, because she was actively involved in a verbal altercation with her partner at the time of the appointment.  AT 2514. Because it appears that the ALJ selectively relied on portions of the evidence and did not clearly explain how she interpreted or reconciled other, potentially contrary evidence related to a possibility for significant absenteeism, I find that the ALJ failed to provide a good reason for rejecting the absenteeism limitation in particular, and that none of her rationale related to that limitation can serve to support her assessment of Dr. Carr's opinion overall.

The ALJ's next cited reason is that Dr. Carr's opinion appears to be based solely on plaintiff's subjective reports, a conclusion she reached based upon both an alleged statement to that effect by Dr. Carr in another

document and her inference that the opinion must be based on subjective

reports because there were no evidence-based screening tools used to

assess plaintiff's mental illness. AT 732.  For Dr. Carr's alleged statement,

the ALJ cites to "23F/8," which is an undated[6] employability assessment

form completed by Dr. Carr for the New York State Office of Temporary

and Disability Assistance in which Dr. Carr states that "client reports

difficulty interacting with others due to unstable mood and poor distress

tolerance" in a response to the question asking him to describe any working

conditions, environments, or work activities that are contraindicated.  AT

1887.  Although this statement appears to have been made around the

same time that Dr. Carr rendered his relevant opinion, it does not, in my

view, constitute substantial evidence by itself to support the ALJ's

conclusion that Dr. Carr's opinion was based solely on plaintiff's subjective

reports without any input from his own professional medical assessment of

plaintiff over the course of years of treatment.  *See Stacey v. Comm'r of*

*Soc. Sec. Admin.*, 799 F. App'x 7, 9 (2d Cir. 2020) (finding error in the

ALJ's rejection of the treating physician opinion for being largely based on

self-reported symptoms because that rationale "ignores that Tobias's

---

[6]        The form does indicate that the last examination was conducted on November
15, 2017, which would likely place the date of the form around that time.

opinion was presumably formed not just based on what Stacey told her, but also on her firsthand observations of Stacey's behavior and affect over the course of dozens of meetings spanning several years").

Further, the fact that there may not have been use of "evidence based screening tools," whatever that would mean in the context of assessing mood instability, social interaction, and stress tolerance in particular, does not invariably lead to a conclusion that a physician has simply adopted a claimant's subjective reports. Indeed, the treatment records of Dr. Carr and Therapist Holland are replete with not only references to mental status examinations showing anxious or depressed moods, constricted affect, defensive behavior, a tendency to blame others for problems, difficulty ignoring irrelevant stimuli, and poor planning or stress tolerance, but also to consistent indicators of how plaintiff reacted to the various stressful events that presented in her life and relationships, references which pervade much of the treatment record to an extent that precludes citation here in any concise manner. The record also documents many instances of plaintiff having difficulty getting along with the people around her, some of which escalated into physical altercations. *See, e.g.,* AT 407 (where she was observed to be very irritable and reporting that she had not been getting along with Dr. Carr and was very unhappy and

frustrated), 581 (reporting conflict with new neighbors and her ex-partner),
587 (reporting stress related to conflict with neighbors and her current
roommate), 595 (reporting constant fighting with her partner and requesting
a sedative medication to control her anger at him), 602 (reporting discord
with her ex-partner's family and friends following their separation), 638
(reporting thoughts of harming her son's girlfriend), 644 (reporting she is
very angry and agitated with her neighbor), 659 (reporting her boyfriend is
supportive but she can barely stand to be around him), 663 (reporting she
got into two fist fights with her neighbors and followed them to the post
office to yell at them), 2250 (reporting she has been working odd jobs but
ends up in arguments with people over getting paid for them), 2291
(reporting she was in a verbal altercation with her son's girlfriend and would
have hit her had she not been stopped, as well as a significant argument
with her partner), 2364 (reporting she was evicted due to a conflict with her
landlord that became physical), 2402 (reporting she got into a physical
altercation with a woman at a store and was arrested for assault), 2448
(reporting unspecified "behavioral incidents" that required police
involvement), 2491 (reporting she recently had a physical altercation with a
19-year-old woman), 2497 (reporting another physical altercation), 2508
(reporting she attacked a woman for making a racist comment about her

friend).  Although these instances were, of course, reported by plaintiff,

reports of objectively verifiable occurrences are quite different from reports

that merely address internal sensations such as depression or anxiety, and

I see no reason why those reports of conflict would not serve as evidence

supporting Dr. Carr's assessment in the same way that objective findings

would.  Further, it has been recognized that subjective reports are

particularly important in cases involving mental impairments due to the

difficulty of observing the symptoms of such impairments, and that the use

of objective testing or "evidence based screening tools" is not necessary.

*Stacey*, 799 F. App'x at 9 (stating that the "expectation that a psychological

opinion be formed only after diagnostic testing is unrealistic," especially "in

cases involving mental health, which tend to be less susceptible to

objective testing and assessment").

In addressing social limitations in particular, the ALJ minimized the

evidence documenting an ongoing pattern of serious issues regarding

plaintiff relating to others, discussing only one or two of plaintiff's many

apparent physical altercations and explaining them away by stating that

one was initiated by the other party rather than plaintiff, and that,

notwithstanding being arrested for assault, plaintiff wanted to attend a

social club and was able to have regular social interactions with her son,

roommate, friends, and boyfriend.  AT 735.  This assessment of the

evidence represents an example of the ALJ grossly over-simplifying the

evidence in the record and relying on unrepresentative pieces of evidence

as a substitute for properly reconciling all of the relevant evidence in the

record.  Because all of those reports of altercations, along with other

evidence in both his treatment notes and those of Therapist Holland,

provide insightful information about whether Dr. Carr's opinion is entitled to

greater weight, I find that the ALJ's conclusion that Dr. Carr merely relied

on plaintiff's subjective reports when rendering his opinion does not

constitute a good reason for affording that opinion little weight.

        The only remaining reason the ALJ provided for rejecting Dr. Carr's

opinion is her assertion that it is contradicted by mental status

examinations in the record and evidence showing improvement in plaintiff's

psychological symptoms.  AT 732.  The ALJ noted in particular that, "when

the claimant is compliant with her medication her psychiatric illness has

been mostly stable," and she has reported improvement in her

psychological symptoms with treatment.  AT 735.  I find that, overall, the

ALJ's assessment of the evidence is inherently unreasonable, with many of

the statements justifying her rationale being merely selective citations to

ostensibly favorable evidence, but that her analysis lacks an appreciation of

the context of the entirety of plaintiff's treatment.  For example, the ALJ

noted that plaintiff reported in July 2019 that she was doing better on

Risperidone, but failed to acknowledge that Risperidone was discontinued

only a month later because it was causing her to have seizures.  AT 2388,

2392.  The ALJ also relied on the fact that plaintiff experienced

exacerbations when off medication, but failed to address evidence that

certain medications plaintiff tried were reported to have no effect, AT 387,

516, 616, 644, 665, 2404, 2748, 2751, or caused side effects, AT 2731,

that she stopped or refused to take certain medications because they

caused her to gain too much weight,[7] AT 407, 2364, or that there were

other reasons for not taking medications at various points in the record,

such as when she was undergoing bariatric surgery and when taking

antibiotics for infections.  AT 2426, 2765.  The ALJ's conclusion that

plaintiff's difficulties came from failing to take medication was therefore a

gross over-simplification of a complicated mental health record, and I am

not convinced that the ALJ appropriately considered all of the relevant

nuances of plaintiff's treatment history.

Relatedly, the ALJ's conclusion that plaintiff's symptoms were being

---

[7]     Plaintiff eventually underwent bariatric surgery for her obesity, so weight gain was apparently quite a valid health concern for her.

adequately addressed when she was compliant with medication and

therapy likewise results from an oversimplification of the record.  In finding

that plaintiff has been "mostly stable" when compliant with medications, the

ALJ again relies on a selective assessment of the record.  AT 735-36.  It is

well-established that an ALJ should not rely on discrete instances of

improvement where the overall record documents a pattern of waxing and

waning mental health symptoms.  *See Colgan v. Kijakazi*, 22 F.4th 353,

362 (2d Cir. 2022) (noting that "'[c]ycles of improvement and debilitating

symptoms [of mental illness],' . . . 'are a common occurrence, and in such

circumstances it is error for an ALJ to pick out a few isolated instances of

improvement over a period of months or years and to treat them as a basis

for concluding a claimant is capable of working'") (quoting *Estrella v.*

*Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)); *see also Anne F. v. Saul*, 19-CV-

0774, 2020 WL 6882777, at *10 (N.D.N.Y. Nov. 24, 2020) (McAvoy, J.)

(finding that, "[w]hen viewed in the context of Plaintiff's extensive treatment

by Dr. Cerio, especially with the evidence of the cyclical nature of the

symptoms of Plaintiff's mental impairments, the ALJ's reference to isolated

treatment notes provides an insufficient basis to provide Dr. Cerio's opinion

less-than-controlling weight").  The ALJ did acknowledge that "the record

shows that the claimant has continued to experience some exacerbations

of her condition due to situational stressors involving her significant other, children, family strife, irritability, verbal/physical aggression, and conflict with others." She failed, however, to explain, other than pointing to the fact that plaintiff has not required hospitalization for her symptoms and to an assessment of plaintiff's ability to socialize that I have already found to be deficient, how such fairly frequent exacerbations are inconsistent with Dr. Carr's opinion indicating greater limitations than those included in the RFC finding. I note in particular that, although plaintiff had a clearly documented period of improvement between approximately September of 2020 and January of 2021, that period is bookended by fairly significant exacerbations, including incidents in which plaintiff was involved in physical altercations with other people. *See e.g.*, AT 2448, 2459, 2461, 2465, 2468, 2471, 2473, 2478, 2485, 2491, 2494, 2499. The ALJ failed to explain how plaintiff's ability to maintain some emotional stability for a period of a few months before again experiencing serious mental health symptoms is indicative of an ability to work on a regular, ongoing basis. Because the reasons the ALJ provided to support her rejection of Dr. Carr's opinion fail to constitute good reasons under the regulations, I find the ALJ erred when weighing that opinion.

The errors discerned in this matter are not harmless. The RFC

finding does not accommodate the more extensive and ostensibly disabling limitations expressed within Dr. Carr's opinion, and therefore a more appropriate assessment of Dr. Carr's opinion could well have resulted in a finding that plaintiff is disabled. This is especially so given that this case is being assessed under the treating physician rule and Dr. Carr's opinion is entitled to special consideration. Remand is therefore required.

Based on the foregoing, I find that the ALJ failed to provide sufficiently good reasons, supported by substantial evidence, for the weight afforded to the opinion of treating physician Dr. Carr, and therefore recommend that this matter be remanded for further administrative proceedings, including a proper assessment of that opinion.

IV.    SUMMARY AND RECOMMENDATION

After considering the record as a whole and the issues raised by the plaintiff in support of her challenge to the Commissioner's determination, I recommend a finding that the determination did not result from the application of proper legal principles and is not supported by substantial evidence. Accordingly, it is hereby respectfully

RECOMMENDED that plaintiff's motion for judgment on the pleadings (Dkt. No. 12) be GRANTED, defendant's motion for judgment on the pleadings (Dkt. No. 14) be DENIED, the Commissioner's decision be

29

VACATED, and this matter be remanded for further proceedings consistent with this decision and order, without a directed finding of disability, pursuant to sentence four of 42 U.S.C. § 405(g).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  <u>FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW</u>. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated:    September 1, 2023
          Syracuse, NY

DAVID E. PEEBLES
U.S. Magistrate Judge